IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | |
|---|---|
| **PROTRADENET, LLC,** § | |
| *Plaintiff,* § | |
| § | **6:18-CV-00038-ADA** |
| v. § | |
| § | |
| **PREDICTIVE PROFILES, INC.,** § | |
| *Defendant.* § | |
| § | |

### ORDER DENYING DEFENDANT'S MOTION TO AMEND JUDGMENT

Before the Court is Defendant Predictive Profiles, Inc.'s ("Defendant") Motion to Amend Judgement. ECF No. 125. The Court has carefully considered the Motion and all pleadings related thereto and **DENIES** the Motion.

The Court finds that this Court's injunction is sufficiently narrowly tailored to address and remedy the specific harm (trademark infringement) that PTN/Dwyer ("Plaintiff") proved at trial. The Court believes that the injunction is warranted based on the Defendant's past conduct. To the extent that the Defendant is correct that the injunction is overbroad because of its potential reach into future conduct by the Defendant, the Defendant is free to move the Court to amend the injunction should a specific issue arise in the future. The Court chooses to maintain a more prophylactic injunction with the understanding that it may have to be modified in the future.

### I.  BACKGROUND

The Court conducted a bench trial in this case in October 2019. The Court determined that Defendant willfully and intentionally infringed Plaintiff's trademarks and breached the PTN Agreement with respect to the marks. The Court entered its Findings of Fact and Conclusions of

1

Law on February 3, 2020 (ECF No. 118) and Amended Findings of Fact and Conclusions of Law on March 10, 2020 (ECF No. 124), finding willful and intentional trademark infringement by Defendant. The Court also found that Plaintiff was entitled to a Permanent Injunction based, in part, on Defendant's willful and intentional trademark infringement and found that the Preliminary Injunction sought by PTN should be made into a Permanent Injunction. On February 19, 2020, the clerk entered a Final Judgment and Permanent Injunction for the Plaintiff. As is fairly standard in cases alleging these types of legal claims, this Court issued a narrowly tailored injunction.

Defendant's Motion seeks to amend the Permanent Injunction in two ways: (1) limit the injunction only to Plaintiff's trademarks that were the subject of the parties' contract; and (2) allow Defendant to use Plaintiff's trademarks if Defendant enters into a written agreement with a franchisee. Plaintiff responds that this Court should deny both of these requests because Defendant not only violated Plaintiff's intellectual property rights by illegally infringing upon its trademarks, but it also repeatedly violated this Court's preliminary injunction. This Court agrees and finds that it the Defendant is not enjoined as is currently set forth in the Permanent Injunction, that Defendant is likely to continue its acts of illegal infringement and force the Plaintiff to resort to serial litigation in an effort to thwart this conduct. To the extent that it was able to do so, the Permanent Injunction that this Court entered ensures only that Defendant is prohibited from wrongful action. In the view of the Court, the Defendant remains fully able to take any actions that the Court would not consider to be violative of the law or of the terms of the Agreement that it entered and that this Court founds that it violated.

## II.     LEGAL STANDARD

Prevailing plaintiffs are entitled to injunctive relief under the Lanham Act in appropriate circumstances. 15 U.S.C. § 1116. A permanent injunction is appropriate when a plaintiff demonstrates "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *ITT Educ. Servs., Inc. v. Arce*, 533 F.3d 342, 347 (5th Cir. 2008) (quoting *eBay, Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006)). A permanent injunction must "be narrowly tailored to remedy the specific action necessitating the injunction." *Fiber Sys. Int'l., Inc. v. Roehrs*, 470 F.3d 1150, 1159 (5th Cir. 2006). Additionally, the parties must "be able to interpret the injunction from the four corners of the order." *Seattle-First Nat. Bank v. Manges*, 900 F.2d 795, 800 (5th. Cir. 1990); *see* FED. R. CIV. P. 65(d).

## III.     ANALYSIS

An injunction that prohibits a willful infringer from future infringement of the plaintiff's trademarks should be narrowly tailored to address only prospective wrongful acts. As the Fifth Circuit has held, "[t]he sweep of equitable discretion is ***at least*** this broad." *Kentucky Fried Chicken Corp. v. Diversified Packaging Corp.*, 549 F.2d 368, 390 (5th Cir. 1977) (emphasis added) (affirming an injunction that prohibited defendant's use of marks even under fair use where defendant engaged in an elaborate scheme to mislead franchisees into believing that it was connected with or approved by Plaintiff).

In *Kentucky Fried Chicken*, the district court accomplished two goals: the need to (1) provide redress for infringement committed by the Defendant; and (2) to adequately guarantee

future relief. *See id.* at 390. These concerns of the Court provided the foundation for the broad application of the safe distance rule. Kentucky Fried Chicken Corporation ("KFC") sued Diversified Packaging Corporation ("Diversified") for its unauthorized manufacturing and selling food containers and napkins bearing KFC's trademarks to KFC's franchisees. *Id.* at 373. Diversified also misled KFC's franchisees by failing to inform them that they were not authorized suppliers of KFC branded sundries. *Id.* at 374. The Fifth Circuit affirmed the trial court's injunction that forbade use of marks that Diversified might otherwise have been entitled to use but for the misconduct. *Id.* at 390. The court determined that Diversified's "conduct clearly calls for strong and effective relief" and that its entering of a broad injunction was "justified by [Diversified's] history of improper behavior." *Id.*

In the Fifth Circuit, this Court clearly has the power to fashion relief against the Defendant and is free to proscribe activities that standing alone would have been unassailable. *Id.* In this case, the Court's Permanent Injunction is sufficiently narrowly tailored to address the violation established, i.e., Defendant's infringement of Plaintiff's trademarks. The injunction imposed by this Court was tailored to prevent Defendant from infringing Plaintiff's trademarks.

With regard to Paragraphs 4 and 6 of the Order, the Court believes that its Order sufficiently describes the actions which are restrained in sufficient detail. FED. R. CIV. P. 65(d)(1). Paragraph 4 enjoins Defendant from infringing all "trademark, service mark, trade name and/or trade dress owned or used by Dwyer Franchising LLC or ProTradeNet, LLC now or in the future." The Court believes that this is more than adequate to clearly delineate the prohibited conduct. The Plaintiff notes that Defendant will not have to "guess" as to what marks and brands are owned and used by Plaintiff, as this information is prominently and publicly available at https://www.neighborlybrands.com/our-brands/.

The Court rejects the Defendant's argument that the injunction must be modified because of any minor difference between the language in the Plaintiff's pleadings and the Court's Order. This is not a preliminary injunction. The purpose of the Complaint was to place the Defendant on notice that the Plaintiff was seeking a permanent injunction against Defendant based on Defendant's impermissible use of trademarks and posting of jobs in a manner that violated the PTN.  And as Plaintiff notes in its Response, it put Defendant on notice that it would ask this Court to grant "such other and further relief as the Court may deem just." *See* Counterclaim Prayer at ¶ 1 [ECF No. 50]. This Court drafted its injunction—not by reviewing the pleadings—but rather in reliance on the evidence that was introduced at trial. If any of that evidence was inadmissible, the time to complain was during the trial. The Court's Permanent Injunction is based on the evidence at trial; it is certainly within the equitable powers granted this Court under 15 U.S.C. § 1116(a) and Rule 65(a) to prevent the violation of Plaintiff's rights as the owner of registered marks, rights under the contract, and rights to prevent further violation of the Lanham Act by the Defendant.

Furthermore, it should also be noted that this was a bench trial. The Court listened to the evidence and determined the credibility of the witnesses and the liability of the Parties. The Court utilized the time that it invested in presiding over the trial and drafting the judgment in determining the appropriate scope of an injunction.

The Plaintiff cites several cases—all of which support this Court's decision not to amend the injunction. The first case is *Epic Tech, LLC v. Lara*, No. 4:15-CV-01220, 2017 U.S. Dist. LEXIS 196705 (S.D. Tex. Nov. 29, 2017), in which the plaintiff allegedly modified and distributed Epic's Legacy sweepstakes software in violation of it copyrights and trademarks. That court found that the defendants were willful infringers and ordered a broad injunction to

address the defendants' wrongful acts. *Id.* at *21. Specifically, the injunction provided that defendants were enjoined from the following:

> Using, disclosing, copying, sharing, relocating, transferring, or distributing to any individuals or entities Epic Tech, LLC's trade secrets, confidential and propriety information, or other information [i.e., trademarks] relating to Epic Tech, LLC's gaming software, including, but not limited to, any Epic Tech Games, and any computer servers containing Epic Tech Games or related software Epic Tech Games, and any computer servers containing Epic Tech Games or related software[.]

*Id.* at *24. The Court in *Epic Tech* determined that the scope of this injunction should cover not only the specific trademarks put into evidence, but *all* of Epic's trademarks and copyrights. In addressing the scope of the injunction, the court stated that an injunction which enjoins an infringer from future infringement of all of plaintiff's trademark "is not over-broad [but] merely enjoins [the defendants] from engaging in further offending conduct." *Id.* at *21.

Next, Plaintiff cites *Choice Hotels Int'l v. Family Tr.*, No. SA-18-CV-00648-ADA, 2019 U.S. Dist. LEXIS 177662 (W.D. Tex. Aug. 8, 2019), a decision from this Court. In that case, the plaintiff entered into a franchise agreement with the defendants to operate a hotel under the marks Comfort Suites and Quality. *Id.* at *3. After the franchise was terminated and the defendants refused to stop using the marks, the plaintiff obtained an injunction prohibiting the defendants from using the Comfort and Quality marks and any future derivative marks. *Id.* at *15.

Furthermore, the Plaintiff cites *China Cent. TV v. Create New Tech. (HK) Ltd.*, No. CV 15-01869 MMM (AJWx), 2015 U.S. Dist. LEXIS 189052 (C.D. Cal. Dec. 7, 2015), a case that this Court finds instructive. In that case, an injunction—which prohibited all acts of infringement and was not just limited to the marks at issue—was not overly broad. *Id.* at *58. The injunction prohibited any use of (1) any works "bearing plaintiffs' trademarks or trade names that are

confusingly similar to the trademarks, trade names, designs, or logos of plaintiffs;" or (2) any of "plaintiffs' marks or any copy, reproduction, or colorable imitation, or confusingly similar simulation of plaintiffs' marks on or in connection with the promotion, advertising, distribution, manufacture or sale of defendants' goods" was narrowly tailored to redress the harm plaintiffs would continue to suffer. *Id.* at *57–58. The court found that such an injunction is not overly broad but instead "directly addresses the infringing conduct in which defendants have engaged." *Id.* at *58.

At the risk of becoming repetitive, the Court believes its injunction is sufficiently narrowly tailored to prevent Defendant from engaging in further illegal or offending conduct. The Court finds that the Defendant has failed to establish that the Court's current injunction prohibits Defendant from committing lawful activity, such as generally offering customers its online hiring tools. But it must do so without violating Plaintiff's trademarks. *ADT, LLC v. Capital Connect, Inc.*, 145 F. Supp. 3d 671, 700 (N.D. Tex. 2015) ("[N]arrow scope of the injunction that solely prevents Capital Connect from continuing to violate the Lanham Act and continuing to compete unfairly reduces the impact of any lawful interests Capital Connect may have through the issuance of this injunction.") (citations and quotations omitted)).

Defendant also argues that this Court erred by enjoining the Defendant from being allowed "to post jobs for Dwyer brand franchisees, subject to a written agreement." Assuming some Dwyer brand franchisee in the future wanted to engage Defendant under written agreement, the Court agrees with the Plaintiff's contention that the use of their trademarks by franchisees is limited and subject to their approval.

In entering its injunction, the Court gave careful consideration to the evidence presented at trial regarding Defendant's "always on" model (which broadcasts postings for ***all*** franchises

and *all* positions) and the evidence that established that Defendant is incapable of sufficiently restricting its posting to specific franchisees or job listings. The Court finds that the injunction it has entered is necessary to avoid the standard concerns in this type of litigation with respect to confusion in the marketplace and disruption caused to Plaintiff's brand franchises, consumers, and trade. As pointed out above, the Fifth Circuit has provided district courts some freedom to take into account the level of a Defendant's willful and intentional infringement of trademarks, as well as other anti-competitive behavior—such as a willful breach of an agreement. The Court may also take into consideration any violations of this Court's preliminary injunction. It is clear from the quantum of damages that the Court has determined that the Defendant caused significant harm.

## IV.    CONCLUSION

The Court **DENIES** the Defendant's Motion to Amend (ECF No. 125).

SIGNED this 6th day of September, 2020.

_____
ALAN D ALBRIGHT
UNITED STATES DISTRICT JUDGE